UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

- against -

HUGH THRASHER, JOHN H. ANDERSON, EZRA CHAMMAH, STANLEY ELBAUM, SCOTT FORBES, GUILLERMO GOMEZ a/k/a WILLIAM GOMEZ, STEPHEN V. R. GOODHUE, JR., IRA GORMAN, GORMAN COMMODITIES & SECURITIES, INC., JONATHAN S. HIRSH, RONALD KUZNETSKY, DARRELL SANDY MARSH, JACK P. MARSH, MICHAEL R. NEWMAN, ROGER K. ODWAK, ANGELO PETROTTO, LEE ROSENBLATT, ROBERT SACKS, JEFFREY A. SANKER, DAVID SCHAEN, LEONARD SCHAEN, JULIAN SCHOR, GREGG R. SHAWZIN, and MARK R. SHAWZIN,

Defendants.

92 Civ. 6987 (JFK)

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION
TO TRANSFER FUNDS TO UNITED STATES TREASURY**

BOHDAN S. OZARUK – BSO-4502
Senior Attorney
ANDREW M. CALAMARI, Regional Director
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
3 World Financial Center, Room 400
New York, NY 10281-1022
Tel.:        212-336-0144
Fax:        212-336-1324
E-mail:     ozarukb@sec.gov

## INTRODUCTION

The plaintiff Securities and Exchange Commission moves for an order directing that (i) funds presently held by the Clerk in the Court Registry Investment System (CRIS) be disbursed to the Commission to be remitted to the United States Treasury and (ii) any future amounts that may be paid by defendants in this action be disbursed to the Commission, to be remitted to the U.S. Treasury. This motion concerns funds that have accumulated in the CRIS *after* this Court's 2006 order to transfer funds then held in the CRIS, to the related class action for distribution to class action plaintiffs.

## STATEMENT OF RELEVANT FACTS

The Commission brought this civil injunctive action to enforce the federal securities laws by complaint dated September 24, 1992, and as amended on March 4, 1993. *Declaration of Bohdan S. Ozaruk* dated September 5, 2013 (Ozaruk Decl.) ¶ 3.

The amended complaint alleged that from May of 1990 to July 12, 1990, defendants Hugh Thrasher, John H. Anderson, Ezra Chammah, Stanley Elbaum, Scott Forbes, Guillermo Gomez, Stephen V.R. Goodhue, Jr., Ira Gorman, Gorman Commodities & Securities, Inc., Jonathan S. Hirsh, Ronald Kuznetsky, Darrell Sandy Marsh, Jack P. Marsh, Michael R. Newman, Roger K. Odwak, Angelo Petrotto, Lee Rosenblatt, Robert Sacks, Jeffrey A. Sanker, David Schaen, Leonard Schaen, Julian Schor, Gregg R. Shawzin, and Mark R. Shawzin, disclosed and traded on nonpublic material information concerning Accor's tender offer for the shares of Motel 6 prior to its public announcement, in violation of the securities laws. Ozaruk Decl. ¶ 4.

That action is concluded. Final judgments were entered against multiple defendants; those judgments ordered disgorgement and prejudgment interest to be paid into the CRIS. Ozaruk Decl. ¶ 5. One of those final judgments was ordered against defendant Jonathan S.

Hirsch. On June 17, 2002, this Court ordered Hirsh to pay disgorgement and prejudgment interest of $520,596, composed of an initial payment of $100,000 plus 60 monthly installments of $7,009.93, with the last payment due in August of 2007. *Id.* ¶ 6. Hirsch made those payments as ordered, but he concluded his payments *after* this Court ordered funds then in the CRIS transferred to class action plaintiffs.

On January 11, 2006, this Court issued an order directing all funds in the CRIS account in this action, as well as the CRIS accounts in a related case *SEC v. Borlinghaus*, 95 Civ. 1520 (JFK), be transferred for distribution among class action litigants in a related class action *In re Motel 6 Securities*, 93 Civ. 2183 (JFK) and 95 Civ. 5191 (consolidated) (JFK) (S.D.N.Y). Ozaruk Decl. ¶ 7. That distribution appears to have long ago concluded. *Id.*, ¶ 8. Hirsh, however, continued to pay the remaining installments of his judgment, as he was ordered. Those amounts have since earned interest. As of June 19, 2013, the total amount in CRIS Account 1:92CV06987-10 was $141,812.02. *Id.*, ¶ 9.

Accordingly, the Commission requests that the Court order the Clerk to disburse the remaining balance on deposit in the CRIS account to the Commission, so that the Commission may remit these amounts to the United States Treasury. Hirsch has not responded to a letter advising him about the Commission's motion, *id.*, ¶ 10, and lead class counsel has stated that the class action will not be making a further distribution. *Id.*, ¶ 11. A proposed Order is submitted as an exhibit to the accompanying Declaration.

## ARGUMENT

### I. The Funds in the CRIS Account Should Be Distributed to the Treasury

The purpose of disgorgement is to deprive violators of their ill-gotten gains. *SEC v. Razmilovic*, 2013 U.S. App. LEXIS 14765, *53 (2d Cir. 2013). It is not to compensate investors.

3

*See FTC v. Bronson Partners, LLC*, 654 F.3d 359, 373 (2d Cir. 2011) (because of disgorgement's primary purpose, "a regulatory agency seeking disgorgement need not identify specific victims to whom payment is due 'in good conscience....'"). The disgorgement remedy is not restitutionary, and runs in favor of the Treasury, not the victims. *Id.*

District courts have the discretion to direct the disgorged money either toward victim compensation, or to the United States Treasury. *SEC v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006). Agencies may, as a matter of grace, attempt to return as much of the disgorgement proceeds as possible to victims. *Bronson Partners,* 654 F.3d at 373. But where distribution to victims of securities fraud is impractical, courts have permitted payment of disgorged funds to the Treasury. *SEC v. Grossman*, 87 Civ. 1031, 2003 WL 133237, *6 (S.D.N.Y. 2003). Here, more than 23 years after this action was first filed, and some 7 years after a distribution to class action plaintiffs appears to have concluded, any further distribution of this limited $141,000 amount is impractical. At this late date, the Commission staff does not expect to be able to identify any victims without incurring significant administrative expenses. And in light of the purpose behind disgorgement, in obtaining a disgorgement award, public entities are not required to make any particular effort to compensate the victims they *can* identify. *Bronson Partners,* 654 F.3d at 373 (emphasis in original). Where distribution is not feasible or appropriate, the money disgorged by the defendant has been paid to the Treasury. *See, e.g., SEC v. Invest Better 2001*, 2013 U.S. Dist. LEXIS 18158, *8 (S.D.N.Y. 2013) (Preska, J.) (granting SEC motion to transfer funds from CRIS to U.S. Treasury, where Commission unable to identify defrauded victims in 2001 "pump and dump" scheme).

Here, further distribution of the funds in the CRIS would be neither feasible nor appropriate. The conduct that is the subject of this action occurred more than two decades ago,

4

and involved victims who may have since died or whose physical location may have changed in the seven years since the last distribution.[1]

Therefore, the Commission requests that the Court order the Clerk to disburse all funds on deposit in the CRIS accounts to the Commission, including all interest earned, so that the Commission may remit these amounts to the United States Treasury. The Commission also requests that the Court order that any future payments to the CRIS by any defendant in this matter be transferred to the Commission without further order, then remitted to the Treasury.

## CONCLUSION

For the foregoing reasons, the Commission requests that the Court order directing the disbursement of (i) funds presently held in the CRIS to the Commission, to be remitted to the United States Treasury and (ii) any future funds the Court or the Commission may collect pursuant to the judgments in this case be disbursed, without further order, to the Commission which will remit the funds into the United States Treasury.

Dated: New York, New York
September 5, 2013

Respectfully submitted,

s/ Bohdan S. Ozaruk
Bohdan S. Ozaruk (BSO-4502)
Attorney for Plaintiff
Securities and Exchange Commission
3 World Financial Center, Suite 400
New York, New York 10281

---

[1] E.g., http://www.census.gov/newsroom/releases/archives/mobility_of_the_population/cb12-240.html (Census reported that approximately 12% of U.S. population changed residences in 2012, an increase from a "record low" 11.6% in 2011)